IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| KERRY LAW and ARNOLD ZUEHLKE, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 04-728-KI<br>*(lead case)* |
| vs. | |
| | OPINION AND ORDER |
| NORTHWEST NATURAL GAS COMPANY, NORTHWEST NATURAL GAS COMPANY RETIREMENT PLAN FOR BARGAINING UNIT EMPLOYEES and NORTHWEST NATURAL GAS COMPANY FOR NON-BARGAINING UNIT EMPLOYEES, | |
| Defendants. | |
| and | |
| IKE WHITTLESEY, MARK PARRISH, JOHN J. SHOOTER, ROGER WHITTLESEY, and PHILIP COURTNEY, | Case No. 05-241-KI<br>*(consolidated case)* |
| Plaintiffs, | |
| vs. | |

Page 1 - OPINION AND ORDER

| | | |
|---|---|---|
| NORTHWEST NATURAL GAS COMPANY, NORTHWEST NATURAL GAS COMPANY RETIREMENT PLAN FOR BARGAINING UNIT EMPLOYEES and NORTHWEST NATURAL GAS COMPANY FOR NON-BARGAINING UNIT EMPLOYEES, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| KEN HOLTMANN and JEFFREY CARL O'NEAL, | ) ) ) | Case No. 05-724-KI *(consolidated case)* |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| NORTHWEST NATURAL GAS COMPANY, NORTHWEST NATURAL GAS COMPANY RETIREMENT PLAN FOR BARGAINING UNIT EMPLOYEES and NORTHWEST NATURAL GAS COMPANY FOR NON-BARGAINING UNIT EMPLOYEES, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| LARRY LUETHE, | ) ) | |
| Plaintiff, | ) ) ) | Case No. 06-98-KI *(consolidated case)* |
| vs. | ) ) | |
| NORTHWEST NATURAL GAS COMPANY, NORTHWEST NATURAL GAS COMPANY RETIREMENT PLAN FOR BARGAINING UNIT EMPLOYEES and NORTHWEST NATURAL GAS COMPANY FOR NON-BARGAINING UNIT EMPLOYEES, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Page 2 - OPINION AND ORDER

Michael Schumann
Zan E. Tewksbury
Steenson, Schumann, Tewksbury,
Creighton & Rose, P. C.
500 Yamhill Plaza Building
815 S. W. Second Avenue
Portland, Oregon  97204

Megan E. Glor
621 S.W. Morrison, Suite 900
Portland, Oregon  97205

    Attorneys for Plaintiffs

David H. Wilson
Francis T. Barnwell
Bullard Smith Jernstedt Wilson
1000 S. W. Broadway, Suite 1900
Portland, Oregon  97205

    Attorneys for Defendant

KING, Judge:

In these consolidated cases, plaintiffs Kerry Law, Arnold Zuehlke, Ken Holtmann, Jeffrey Carl O'Neal, Ike Whittlesey, C.G. Nick Courtney, Mark Parrish, John J. Shooter,[1] Roger Whittlesey, and Philip Courtney,[2] all backhoe operators, bring claims arising out of Northwest Natural Gas Company's ("NWN") classification of them as independent contractors. In their first and second claims for relief, they allege that NWN deprived them of overtime pay in violation of the Fair Labor Standards Act and Oregon Failure to Pay Overtime laws. In their third claim for relief, they allege NWN violated the duty of good faith and fair dealing implicit in

---

[1] All complaints prior to the Third Amended Complaint referred to this plaintiff as John V. Shooter.

[2] All complaints prior to the Third Amended Complaint referred to this plaintiff as Phillip Courtney.

Page 3 - OPINION AND ORDER

the employment contract between plaintiffs and the company. Finally, they allege NWN, and the company's pension plans, violated the Employee Retirement Income Security Act ("ERISA") in denying plaintiffs their retirement benefits. Before me are defendants' Motion to Dismiss (#128) the third claim, and Motion for Partial Summary Judgment (#136) on the third and fourth claims.

## BACKGROUND

I.  Procedural Background

On October 18, 2005, I issued an Opinion and Order finding plaintiffs' claim for breach of contract was preempted by ERISA. I stayed the case for exhaustion of administrative remedies, but allowed limited discovery. On December 12, 2006, I held a status conference at which the parties agreed all administrative remedies had been exhausted; plaintiffs' claims for benefits had been denied.

I permitted plaintiffs to file a Third Amended Complaint, which they did on February 2, 2007. In their Third Amended Complaint, plaintiffs added NWN's pension plans as defendants on their fourth claim for relief: Northwest Natural Gas Company Retirement Plan for Bargaining Unit Employees ("BU Plan") and Northwest Natural Gas Company Retirement Plan for Non-Bargaining Unit Employees ("NBU Plan") (collectively, "the Plans").

II. Factual Background

The ten plaintiffs in these consolidated cases provided backhoe services to NWN in connection with repair and installation of gas lines. Plaintiffs typically worked at least 40 hours a week, and some weeks more than 40 hours. Luethe, the first plaintiff to begin working for NWN, began working for the company in 1967. John Shooter, the last plaintiff to begin working for the company, started in 1993.

Plaintiffs allege that NWN directed the hours and location of the work to be performed,

Page 4 - OPINION AND ORDER

told plaintiffs when to start and when to stop working, directed the type of work to be performed by plaintiffs, set uniform, non-negotiable rates of pay, required attendance at staff meetings, retained the right to terminate, and prohibited the subcontracting of work in the event of illness. Plaintiffs worked solely or almost solely for NWN. Plaintiffs provided their own backhoes, dump trucks, and trailers.

Plaintiffs signed an agreement in 1994 requiring each plaintiff to maintain independent contractor status and to notify NWN if the status changed. All but four of the plaintiffs had been working for NWN between thirteen and twenty-seven years prior to being asked to sign the agreement.

Plaintiffs Law and Zuehlke each applied for and received unemployment after NWN terminated their work.

NWN sponsors and maintains the BU Plan and the NBU Plan. The Plans are intended to be qualified retirement plans under Section 401(a) of the Internal Revenue Code and are employee pension benefit plans under Section 3 of ERISA. Beginning January 1, 2004, both Plans excluded any individuals whom NWN did not classify as an employee and any person whose compensation NWN did not report on a W-2 form. Before January 1, 2004, both Plans excluded employees who were paid a "fee under contract." The BU Plan also requires that an employee be covered by the Joint Accord, which is the collective bargaining agreement between NWN and the Office and Professional Employees International Union Local 11 ("OPEIU"). The Joint Accord gives covered employees employment-related rights, including: employment security, guaranteed wage rates and increases, paid vacation and disability leave, and health insurance coverage.

Plaintiffs filed claims for benefits under both the BU Plan and the NBU Plan. The

Page 5 - OPINION AND ORDER

administrator denied the claims on the basis that (1) NWN classified plaintiffs as independent contractors and did not report their pay on a W-2 form; (2) plaintiffs were paid a "fee under contract," and (3) plaintiffs were not covered by the Joint Accord. Plaintiffs appealed those denials on April 14, 2006. On October 20, 2006, the Review Committee denied benefits on the basis that (1) the preponderance of the evidence indicated that plaintiffs were not common law employees of NWN, (2) the Plans' language excluded plaintiffs from participation even if they were common law employees, (3) plaintiffs were not eligible under the BU Plan because they were not covered by the Joint Accord, and (4) the claims were barred by the six-year statute of limitations.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

I.   Plaintiffs' Breach of Contract Claim

NWN moves for summary judgment on plaintiffs' breach of contract claim.[3] The

---

[3]NWN filed both a motion to dismiss and a motion for summary judgment on plaintiffs' breach of contract claim, making the same arguments in each motion. I will resolve the issue on

Page 6 - OPINION AND ORDER

company argues that plaintiffs have failed to state a claim, that the claim is preempted by ERISA, is preempted by the Labor Management Relations Act, is within the jurisdiction of the National Labor Relations Board, and falls outside the applicable six-year statute of limitations. I need not reach the latter three arguments because I conclude plaintiffs have failed to state a claim for breach of contract, and that plaintiffs' claim is preempted by ERISA.

The claim at issue reads, in pertinent part:

**Breach of Contract**

22. The contracts between NWNG and each of the Plaintiffs are subject to the covenant of good faith and fair dealing implied in all Oregon contracts. NWNG deliberately classified Plaintiffs as independent contractors despite the fact that NWNG was aware Plaintiffs were employees under state and federal law. Plaintiffs should have been entitled to the compensation, rights and benefits conferred upon NWNG employees. NWNG's exclusion of plaintiffs from these programs, accords, agreements, and plans, including the Retirement Plan, and the compensation, rights and benefits conferred upon its employees constituted a breach of the covenant of good faith and fair dealing inherent in every contract.

23. As a result of NWNG's breach of contract as alleged herein, plaintiffs have been damaged in the following ways, among others: by the value of what each of them would have received under NWNG's Retirement Plan had they been properly classified as employees; by amounts paid out of pocket by plaintiffs for health insurance and treatment; by the value of paid vacation, holidays and sick days; and by amounts paid by them for what should have been the employer's share of FICA taxes. Plaintiffs are also entitled to lost wages and benefits from the time NWNG stopped utilizing their services in violation of the job protection rights they would have had if they were properly classified.

Third Amended Complaint at 7-8.

Every contract contains an implied duty of good faith. <u>Uptown Heights Associates v. Seafirst Corp.</u>, 320 Or. 638, 645, 891 P.2d 639 (1995). The duty is applied in a manner to

---

the motion for summary judgment.

Page 7 - OPINION AND ORDER

effectuate the objectively reasonable contractual expectations of the parties. The duty of good faith cannot serve to contradict express contractual terms, even for "an unpleasantly motivated act that is expressly permitted by contract." Id. (internal quotation omitted).

Plaintiffs clarify that the covenant of good faith and fair dealing is implied in their at-will employment agreements arising from the master-servant relationship. See Sheets v. Knight, 308 Or. 220, 233, 779 P.2d 1000 (1989) (the duty applies to "matters pertaining to ongoing performance of at-will employment agreements"), abrogated on other grounds, McGanty v. Staudenraus, 321 Or. 532, 901 P.2d 841 (1995)(en banc).

Plaintiffs fail to identify the offer, acceptance and consideration that resulted in the formation of a contract from which the duty of good faith and fair dealing arises. If the agreement is the at-will employment agreement arising from the working relationship of the parties, plaintiffs do not provide any evidence that the parties intended NWN to treat plaintiffs as employees. Wooton v. Viking Distributing Co., Inc., 136 Or App. 56, 59, 899 P.2d 1219 (1995) (to determine if a contract exists, the court examines "the parties' objective manifestations of intent, measured by whether a reasonable person would construe a promise from the words and acts of the other").

Plaintiffs rely on Vizcaino v. Microsoft Corp., 97 F.3d 1187 (9th Cir. 1996) ("Vizcaino I"), adhered to on rehearing, en banc, 120 F.3d 1006 (9th Cir. 1997) ("Vizcaino II"). The Ninth Circuit in Vizcaino II concluded that Microsoft offered an Employee Stock Purchase Plan–not subject to ERISA, but subject to Washington state law–to all employees. The court construed the eligibility criteria of the plan, which extended benefits to all employees, to be the offer. Applying the law of the State of Washington, the court found acceptance and consideration in the employees' knowledge about the existence of the plan and in their continued work for the

Page 8 - OPINION AND ORDER

company. Plaintiffs do not supply any similar legal analysis or factual support for their assertion that their case is "eerily similar" to Vizcaino II.[4]

In addition, NWN points out that each plaintiff signed a contract in 1994 agreeing that he was an independent contractor. NWN argues that plaintiffs cannot claim a breach of good faith and fair dealing in classifying plaintiffs the way NWN has because "the duty of good faith and fair dealing–which serves to effectuate the objectively reasonable expectations of the parties–may be implied as to a disputed issue only if the parties have not agreed to an express term that governs that issue." Gibson v. Douglas County, 197 Or. App. 204, 217, 106 P.3d 151 (2005).

The court cannot imply the existence of a duty to treat plaintiffs as employees when the 1994 agreement states exactly the opposite–that NWN agreed to treat plaintiffs as independent contractors.

Plaintiffs appear to question the validity of the 1994 agreement, arguing that "plaintiffs were given no choice but to sign a contract of adhesion that falsely stated they were free from the direction and control of NWN, among other things." Pls.' CSF in Response to Defs.' CSF ¶ 4. Plaintiffs also assert that, "The 'agreement' plaintiffs were each required to sign many years after most of them had already been working for NWN were illusory, materially false, and unenforceable as void by public policy, and any requirement in the agreement that plaintiffs complied with they did they did [sic] so only because NWN required it as a condition of plaintiffs being able to remain employed by NWN, their main and nearly sole source of income

---

[4]At least with respect to the Plans discussed below, and as explained below, plaintiffs do not qualify for the NBU or BU Plans such that it could be said NWN extended an "offer" to plaintiffs to participate in the Plans.

Page 9 - OPINION AND ORDER

for years." Pls.' CSF in Response to Defs.' CSF ¶¶ 8 and 9.[5]  Plaintiffs do not cite any case law supporting their argument that the 1994 agreement is unenforceable, and they do not seek reformation of the agreement.

Plaintiffs rely on the following facts to support their assertion that the 1994 agreement is unenforceable:  the plaintiffs had been working for between one year and twenty-seven years prior to being asked to sign the 1994 agreement, the agreement followed the definition of independent contractor contained in ORS 670.600, plaintiffs were required to sign the agreement or risk losing the NWN work, the work arrangements before and after signing the agreement did not change, the agreement does not contain payment information, plaintiffs worked 40 hours a week or more for many years, and plaintiffs relied on the NWN work for their livelihood.

A contract is not unenforceable under Oregon law merely because it is a contract of adhesion.  Chalk v. T-Mobile, CV 06-158-BR, 2006 WL 2599506, * 4 (D. Or. Sept. 7, 2006). Plaintiffs do not provide evidence of procedural unconscionability in the way the contract was formed, Vasquez-Lopez v. Beneficial Oregon, Inc., 210 Or. App. 553, 567, 152 P.3d 940 (2007) (citations omitted) ("deception, compulsion, or lack of genuine consent" factors to consider), nor do they argue that the terms of the contract are so one-sided as to be substantively unconscionable.

As for plaintiffs' argument of economic duress, plaintiffs must establish:  "(1) wrongful acts or threats; (2) financial distress caused by the wrongful acts or threats, and (3) the absence of any reasonable alternative to the terms presented by the wrongdoer." Kreidler v. Taylor, 473 F.

---

[5]Plaintiffs should not have made these legal arguments in their Concise Statement of Facts as that document is limited to "the material facts which are necessary for the Court to determine the limited issues presented in the motion for summary judgment." L.R. 56.1(c)(2).

Supp. 2d 1090, 1096 (D. Or. 2007) (quoting <u>Oregon Bank v. Nautilus Crane & Equip. Corp.</u>, 68 Or. App. 131, 142, 683 P.2d 95 (1984)).[6]  First, I am not convinced NWN's request that plaintiffs sign the 1994 agreement or risk losing work was "wrongful."  As the Tenth Circuit remarked, "[T]he fact of the matter is, while the [workers] complain that the Agreements were presented to them on a 'take-it-or-leave-it' basis, they were free to not 'take it' and the [company] could hire people who would."  <u>Capital Cities/ABC, Inc. v. Ratcliff.</u>, 141 F.3d 1405, 1410 (10th Cir. 1998).  Even assuming, however, that what NWN did constitutes wrongful conduct, plaintiffs have not asserted that they had no other alternative than to sign the contract–for instance, that they could not obtain backhoe work elsewhere.

Furthermore, plaintiffs supply no legal argument as to why the 1994 agreement is void as against public policy.  As the Supreme Court explained over a hundred years ago,

> [I]t must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare.

<u>Baltimore & O.S.R. Co. v. Voigt</u>, 176 U.S. 498, 505 (1900).

Even if the 1994 agreement inaccurately reflects the facts–that plaintiffs, for example, were free from NWN's direction and control, when in reality they were not–there is no question that NWN never intended to treat plaintiffs as employees.  Accordingly, for purposes of determining whether plaintiffs state a claim for breach of the duty of good faith and fair dealing, a doctrine intended to effectuate the objectively reasonable expectations of the parties, the 1994

---

[6]"Whether particular facts are sufficient to constitute a defense of economic duress or business compulsion is a matter of law for the courts, while the question of whether the facts alleged actually exist is a matter for the jury."  <u>Kreidler</u>, 473 F. Supp. 2d at 1096.

Page 11 - OPINION AND ORDER

agreement is instructive.

Additionally, to the extent plaintiffs seek "the value" of what each would have received from a plan governed by ERISA, I reassert the reasoning in my Opinion and Order of October 18, 2005, and find that portion of plaintiffs' breach of contract claim is preempted by ERISA.

Plaintiffs fail to state a claim for breach of the covenant of good faith and fair dealing, and fail to raise a material issue of fact that the 1994 agreement is unenforceable. Additionally, the portion of plaintiffs' claim seeking "the value" of ERISA benefits is preempted by ERISA. Accordingly, NWN is entitled to summary judgment on plaintiffs' third claim for relief.

II.     Plaintiffs' ERISA Claim

NWN and the Plans seek summary judgment on plaintiffs' fourth claim for relief, in which plaintiffs allege defendants violated 29 U.S.C. § 1132(a)(1)(B) by denying them benefits under the Plans. Defendants assert that plaintiffs are not eligible for benefits under the Plans, that plaintiffs' claim is barred by the six-year statute of limitations, and that, even were I to reach the merits, plaintiffs meet the criteria of independent contractors, as opposed to employees. I decide only the first issue.

    A.     Standard of Review

ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989) (internal quotation and citation omitted). When a denial of benefits is challenged under ERISA's 29 U.S.C. § 1132(a)(1)(B), the court's review of the administrator's decision is *de novo* unless the plan unambiguously confers discretion on the administrator to determine eligibility for benefits or to construe the terms of the plan. If the plan confers discretion on the administrator, the court reviews the decision for an abuse of discretion

Page 12 - OPINION AND ORDER

and can only set aside the discretionary determination if it is arbitrary and capricious.[7]

Both the BU Plan and the NBU Plan give broad discretion to the plan administrator to interpret the plan language and to make decisions on benefits claims. Pursuant to these provisions, and the Ninth Circuit cases, defendants argue that the standard of review is abuse of discretion, and is limited to the record created during the administrative review.

The Ninth Circuit's recent decision teaches that the abuse of discretion standard applies even if the administrator has a conflict of interest. Abatie v. Alta Health & Life Ins., 458 F.3d 955, 967 (9th Cir. 2006) (en banc). Similarly, minor procedural irregularities do not shift the standard of review from abuse of discretion to de novo. Id. at 972. Rather, pursuant to Abatie, the court should use the abuse of discretion standard and "tailor its review to all the circumstances before it," id. at 968, rendering the conflict of interest and minor procedural irregularities as factors to consider.

However, the Ninth Circuit instructed that procedural irregularities may be "so substantial as to alter the standard of review" from abuse of discretion to *de novo*. Id. at 971. In order for the *de novo* standard to apply, the administrator must have engaged in violations of the procedural requirements of ERISA that "are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm." Gatti v. Reliance Standard Life Ins. Co., 415 F.3d 978, 985 (9th Cir. 2005) (as amended).

Plaintiffs make a number of arguments suggesting that the denials are subject to *de novo* review; among other reasons, they argue this issue is one of law, not fact, because it involves

---

[7] The Ninth Circuit has noted that the standards of "arbitrary and capricious" and "abuse of discretion" differ in name only. Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317, 1321 n.1 (9th Cir. 1995).

Page 13 - OPINION AND ORDER

construction of an ERISA provision, that a structural conflict of interest exists, that the fiduciary was biased and had something to gain from denying benefits to plaintiffs, and that the Review Committee based its decision on new information without giving plaintiffs an opportunity to respond.

I need not decide this issue because even were I to accept plaintiffs' assertion that a *de novo* standard applies, defendants did not violate ERISA.

B.   Whether Plaintiffs Qualify for Benefits Under the ERISA Plans

Defendants contend that plaintiffs do not qualify for benefits under the Plans, and argue that NWN can establish pension plans for some employees and not others. See Hensley v. NW Permanente PC Retirement Plan & Trust, 258 F.3d 986, 1000 (9th Cir. 2001) ("ERISA contemplates that there will be plans that do not cover all categories of employees," citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 91 (1983)), overruled on other grounds by Abatie, 458 F.3d 955; Wolf v. Coca-Cola Co., 200 F.3d 1337, 1340-41 (11th Cir. 2000); Capital Cities/ABC, Inc., 141 F.3d at 1409 (10th Cir. 1998); MacLachlan v. ExxonMobil Corp., 350 F.3d 472, 482 (5th Cir. 2003). Accordingly, to be entitled to benefits, plaintiffs must prove not only that they are common law employees, but also that they are eligible under the requirements of the plans.[8] As analyzed below, regardless of the standard of review used, plaintiffs are not eligible for retirement benefits under the Plans.

1.   Pre-2004 Plans

The pre-2004 Plans exclude anyone whose compensation was in the form of a "fee under

---

[8]For this reason, I reject plaintiffs' assertion that I must first determine whether they are common law employees, and therefore eligible to bring an ERISA claim. Given that the Plans impose additional eligibility criteria beyond the need to be a common law employee, resolving the question of plaintiffs' employment status first would result in an inefficient use of judicial resources if plaintiffs are ineligible for benefits under the terms of the Plans.

Page 14 - OPINION AND ORDER

contract." More specifically, the plan defines "employee" to mean:

> "Employee" means any person employed by the Company, including an officer, who receives a regular stated compensation from the Company other than a retirement allowance, pension, retainer or **fee under contract**, but shall not include directors who are not otherwise employed by the Company. To the extent required under the Code, "Employee" includes a "leased employee" (as defined in Code § 414(n)).

Doolittle Decl., Ex. 1 at 2, Ex. 2 at 2 (emphasis added).

The Plans denied plaintiffs' claims on the ground that plaintiffs were paid a fee under contract, and plaintiffs did not appeal that ruling. Instead, plaintiffs appealed on the basis that they were common law employees. The Review Committee agreed with the initial decision that plaintiffs fell within the "fee under contract" exclusion.

Plaintiffs assert that the "fee under contract" exclusion is "clearly ambiguous in light of the 2004 Plans amendment to 'clarify' the definition of 'Eligible Employee' under the Plans to expressly exclude plaintiffs." Pls.' CSF in Response to Defs.' CSF ¶ 22.[9] Plaintiffs do not explain why the "fee under contract" language is ambiguous, and do not give an alternative construction. Indeed, they concede that the administrator "has full discretion to interpret" the "fee under contract" language. Id. They do not claim they meet the eligibility criteria. Indeed, my review of the record reveals that plaintiffs performed services in return for fees under a contract; plaintiffs had to submit invoices to NWN, payments were made through NWN's Purchasing Department, rather than payroll, and the services were performed pursuant to a Purchase Order. Accordingly, even under a *de novo* standard of review, plaintiffs do not qualify

---

[9]Again, plaintiffs should not have made this legal argument in their Concise Statement of Facts as that document is limited to "the material facts which are necessary for the Court to determine the limited issues presented in the motion for summary judgment." L.R. 56.1(c)(2).

Page 15 - OPINION AND ORDER

for benefits under the pre-2004 Plans.[10]

    2.    Post-2004 Plans

After January 1, 2004, the Plans defined an employee "as a person employed by the Company, who is classified by the Company as a common-law employee and whose compensation for work performed for the Company is reported by the Company on a Form W-2." Doolittle Decl., Ex. 1 at 91; Ex. 2 at 122.

NWN did not classify plaintiffs as employees, and did not report their compensation on W-2 forms. Plaintiffs do not dispute these facts. Instead, plaintiffs argue that under the federal common law definition of employee, applying the factors in Nationwide Mutual Ins. Co. v. Darden, 503 U.S. 318 (1992), plaintiffs are employees. However, plaintiffs do not argue that this is the test the Plans were required to use in determining whether plaintiffs were eligible for benefits under the Plans.

Rather than using the Darden factors, the Plans considered the following factors in concluding that plaintiffs were never "classified by the Company as a common-law employee:" plaintiffs "performed services under a Purchase Order, not as an individual in an employee relationship with the Company;" plaintiffs "had to submit invoices to obtain payment for services performed and equipment rental, while hourly Company employees are paid based on time cards;" plaintiffs were paid "through the Company's Purchasing Department, based on invoices submitted, while Company employees are paid through the Company's Payroll Department;" payments "were not reported on Form W-2, as would have been the case if the payments were

---

[10]During the oral argument, plaintiffs stated that the pre-2004 Plans are inapplicable to plaintiffs because they were not in effect at the time plaintiffs applied for benefits. However, plaintiffs imply in a footnote in their memorandum that prior versions of the Plans may be applicable. Pls.' Opp. to Defs.' Mot. for Summ. J. at 18 n.14.

Page 16 - OPINION AND ORDER

treated as wages paid to an employee of the Company;" and plaintiffs "signed an Agreement acknowledging that [plaintiffs] would not take any action to threaten your independent contractor status." Doolittle Decl., Ex. 3, Tab 2 at 4.

Given that NWN may exclude categories of employees from Plan coverage, that plaintiffs do not dispute that NWN did not classify them as employees, or report their income on W-2 forms, and that plaintiffs do not argue the Plans should have employed the Darden factors in determining whether plaintiffs were "classified by the Company as common-law employees," NWN is entitled to judgment on this claim.

Plaintiffs do argue, however, that the amendment made to the Plans in 2004, changing the eligibility language, is impermissibly based on the length of service. ERISA prohibits pension plans from excluding common law employees on the basis of an age older than 21 or a term of service longer than one year. Specifically, ERISA reads,

> No pension plan may require, as a condition of participation in the plan, that an employee complete a period of service with the employer or employers maintaining the plan extending beyond the later of the following dates–(i) the date on which the employee attains the age of 21; or (ii) the date on which he completes 1 year of service.

29 U.S.C. § 1052(a)(1)(A).

Plaintiffs assert that NWN changed the plan to avoid giving retirement benefits to plaintiffs because it knew plaintiffs were reaching retirement age, were alerted that plaintiffs may be entitled to benefits when some of the plaintiffs applied for and received unemployment, knew it would be subject to an IRS audit regarding its classification of plaintiffs as independent contractors, and justified the amendment on the basis that it desired to "clarify that certain classes of Employees are not eligible to participate in the Plan." Pls.' CSF ¶ 15, citing Doolittle Decl., Ex. 1 at 91; Ex. 2 at 121.

Page 17 - OPINION AND ORDER

Contrary to plaintiffs' argument, the amendment clarifying eligibility criteria does not violate ERISA's prohibition on excluding employees on the basis of years of service. Nothing in the Plans conditions eligibility on years of service. In addition, the 2004 amendment to the Plans did not change plaintiffs' status–they were ineligible for benefits before and after the amendment. In sum, there is no basis on which to conclude that plaintiffs were excluded because of their length of service to NWN.

Accordingly, because plaintiffs fail to raise a material issue of fact as to the eligibility criteria, or how those eligibility criteria were applied, defendants are entitled to summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment (#136) is granted. Defendants' Motion to Dismiss (#128) is moot. Defendants are entitled to judgment on plaintiffs' third and fourth claims for relief.

IT IS SO ORDERED.

Dated this      2nd       day of May, 2007.

                                                 /s/ Garr M. King
                                                 Garr M. King
                                                 United States District Judge